UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff,

-against-

DAMONE GADSDEN,

                    Defendant.

06 Cr. 122 (LAP)

ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Damone Gadsden's motion pursuant to 18 U.S.C § 3582(c) (Letter from Theodore S. Green ("Def. Mot."), dated Sept. 29, 2020 [dkt. no. 232]) for compassionate release due to COVID-19.  For the reasons set out below, the motion is denied.

I.   Background

As the Court of Appeals recounted in United States v. Smith, 982 F.3d 106 (2d Cir. 2020):

> On April 26, 2007, a jury convicted Gadsden of one count of conspiracy to distribute and possess with intent to distribute 50 grams and more of crack cocaine, in violation of 21 U.S.C. §§ 846, 812, 841(a)(1), and 841(b)(1)(A), and one count of distributing and possessing with intent to distribute crack cocaine, in violation of §§ 812, 841(a)(1), and 841(b)(1)(C). Because of Gadsden's status as a prior drug felon, his conviction of an offense involving 50 grams and more of crack cocaine mandated a statutory penalty range of 20 years to life in prison. See 21 U.S.C. § 841(b)(1)(A)(iii) (2006). At Gadsden's sentencing hearing, then-Judge Robinson of the United States District Court for the Southern District of New York found that Gadsden had been responsible for distributing

more than 1.5 kilograms of crack cocaine and that
Gadsden's recommended Guidelines sentence was life in
prison. Judge Robinson determined that a life sentence
would be excessive, however, and he sentenced Gadsden
instead to 300 months in prison on each count, with the
sentences to run concurrently.

Gadsden appealed, and we remanded the case for
resentencing in light of the Supreme Court's intervening
decision in Kimbrough v. United States, 552 U.S. 85
(2007), and recent revisions that had been made to the
Sentencing Guidelines. See United States v. Gadsden, 300
F. App'x 108, 111 (2d Cir. 2008). At Gadsden's
resentencing hearing, Judge Robinson found that
Gadsden's recommended sentence under the revised
Guidelines was 360 months to life in prison—a range still
significantly above the 300-month sentence that Judge
Robinson had imposed. Judge Robinson nevertheless
reduced Gadsden's sentence further after engaging in a
colloquy with the parties regarding pending federal
legislation that would reduce the disparity between the
amount of crack cocaine and the amount of powder cocaine
that triggered certain penalties. Judge Robinson
hypothesized that if there were a one-to-one ratio
between the penalties for powder and crack cocaine, and
if that ratio were applied to the Guidelines—such that
the Guidelines range for a given amount of crack was
reduced to the Guidelines range for the same amount of
powder—then Gadsden's recommended sentence would be 210
to 262 months, rather than 360 months to life. With this
hypothetical range in mind, and having stated that he
would "give Mr. Gadsden every benefit I think he could
possibly receive here," Judge Robinson resentenced
Gadsden to 262 months in prison on each count, with the
sentences to run concurrently. App'x 644:11–12. In doing
so, Judge Robinson also stated:

Let me be clear that, in my view, even if the
[pending legislation] were to pass, Mr. Gadsden would be
entitled to, and I would give him no further reduction
from this sentence, because even under that best-case
scenario and under the best-case scenario proposed by
[Gadsden's counsel], the guideline range for Mr. Gadsden
would be 210 to 262 months, which this sentence obviously
falls within. And so it would be my position that, even
if Congress were to pass a one-to-one ratio, and make it
retroactive so that it applies to defendants such as Mr.
Gadsden, that he would be entitled to no further

2

reduction and that I would not give him one. That doesn't
stop him from making an application or appealing or doing
whatever it is he has a right to do, but I just wanted
to make it clear that it is, in my view, this is the
absolute bottom under any scenario that I can envision,
including Congress passing a bill making the powder
versus crack cocaine ratio one to one. This is the lowest
sentence that would be in any way even a reasonable one
for Mr. Gadsden. Id. at 646:7-25.

Three months after Gadsden's resentencing,
President Obama signed into law the Fair Sentencing Act
of 2010, Pub. L. No. 111-220, 124 Stat. 2372, which was
the product of the pending legislation that Judge
Robinson and the parties had discussed. As relevant
here, Section 2 of the Fair Sentencing Act increased the
amount of crack required to trigger the statutory
penalty range mandated by 21 U.S.C. § 841(b)(1)(A)—
which, in Gadsden's case, had been 20 years to life in
prison—from 50 to 280 grams. See 124 Stat. at 2372.
Initially, the Fair Sentencing Act's reforms did not
apply retroactively to defendants like Gadsden who had
been sentenced prior to its passage. See Dorsey v. United
States, 567 U.S. 260, 273 (2012). Several years later,
however, President Trump signed the First Step Act of
2018, Pub. L. No. 115-391, 132 Stat. 5194, which gave
retroactive application to certain provisions of the
Fair Sentencing Act. In particular, Section 404 of the
First Step Act provides as follows:

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
(a) DEFINITION OF COVERED OFFENSE.—In this section,
the term "covered offense" means a violation of a Federal
criminal statute, the statutory penalties for which were
modified by section 2 or 3 of the Fair Sentencing Act of
2010 . . . , that was committed before August 3, 2010.
(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that
imposed a sentence for a covered offense may, on motion
of the defendant, the Director of the Bureau of Prisons,
the attorney for the Government, or the court, impose a
reduced sentence as if sections 2 and 3 of the Fair
Sentencing Act of 2010 . . . were in effect at the time
the covered offense was committed.
(c) LIMITATIONS.—No court shall entertain a motion
made under this section to reduce a sentence if the
sentence was previously imposed or previously reduced in
accordance with the amendments made by sections 2 and 3

3

of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section. First Step Act § 404, 132 Stat. at 5222

On June 20, 2019, Gadsden moved for a sentence reduction under Section 404. The government opposed, arguing that Gadsden was ineligible for relief because he had not been sentenced for a "covered offense" within the meaning of Section 404(a). Although the government acknowledged that Section 2 of the Fair Sentencing Act had increased the amount of crack required to trigger the penalties imposed by 21 U.S.C. § 841(b)(1)(A), it argued that the penalties for Gadsden's offense had not been modified because the 1.5 kilograms attributed to him at sentencing exceeded even the new 280-gram threshold. The government argued in the alternative that, regardless of Gadsden's eligibility, his motion should be denied as a matter of the court's discretion.

Judge Preska—to whom the case was assigned after Judge Robinson's retirement—denied Gadsden's motion. Judge Preska noted that the parties disagreed about whether Gadsden was eligible for relief under Section 404, but she declined to resolve the dispute, concluding instead that any further sentence reduction was unwarranted regardless of Gadsden's eligibility. In reaching this conclusion, Judge Preska noted Gadsden's past engagement in violent conduct, as well as his offsetting "exemplary conduct while incarcerated." Special App'x 2. Judge Preska also stated that she had "relie[d] on the facts that . . . Gadsden's current sentence is already substantially below the guidelines range under the First Step Act, and . . . Judge Robinson, who presided over Gadsden's trial, noted that 'this is the lowest sentence that would be in any way even a reasonable one for Mr. Gadsden.'" Id. The order denying Gadsden's motion was entered on September 13, 2019, and Gadsden timely appealed.

Id. at 108-110.

The Court of Appeals affirmed, finding that the Court had not abused its discretion in denying Gadsden's motion.  (Id. at 113.)

On August 11, 2020, Defendant requested compassionate release from the Warden of USP Lewisburg.  (Def. Mot at 2.) That request was denied on August 20, 2020, and Gadsden, though counsel, appealed, but no response has been received.  (Id.)  By letter dated September 29, 2020, Defendant moved for compassionate release in this Court.  (Id.)

With respect to COVID-19, Defendant points out that, as reflected in the 2007 PSR at paragraph 74, he "is asthmatic and uses the inhaler pump on an as-needed basis."  (Id. at 6.)  He also notes that his BMI is 30 or more, putting him in the obesity category as defined by the CDC for being at increased risk for severe illness from COVID-19.  (Id.)

In his motion, Defendant notes that all of his co-defendants (who pleaded guilty) have been released from prison. (Id. at 3.)  He also notes that he earned his GED in 2013 and has taken a variety of courses, including in body composition and weight management, marketing, goal setting, typing, computers, life skills, employment skills, and how to get a job, among others.  (Id. at 3-4.)  Defendant points out that he has only had one minor disciplinary infraction since his incarceration and that took place in 2008.  (Id. at 4.)

Defendant also calls the Court's attention to the letters submitted in support of his First Step Act motion from his younger sister, Leatha Harvell, highlighting his plans to seek employment in the trucking business, and from a family friend, Thomas Armwood, highlighting Defendant's devotion to family and friends and his support of young people.  (Id. at 5.)  Defendant also points out the sentiments expressed at his 2010 sentencing by the daughter of his then-girlfriend to the effect that Defendant had been a supportive father figure in her life. (Id.)

## II.  Applicable Law

A court normally may not modify a term of imprisonment once it has been imposed, but "compassionate release" is among the limited exceptions.  United States v. Demaria, No. 17 CR. 569 (ER), 2020 WL 1888910, at *2-3 (S.D.N.Y. Apr. 16, 2020). Compassionate release allows a court to reduce a term of imprisonment where, among other things, "after considering the factors set forth in section 3553(a)," "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).

Compassionate release considerations are guided by the policy statement within U.S. Sentencing Guidelines § 1B1.13. See 18 U.S.C. § 3582(c)(1)(A).  Under Note 1 to U.S.S.G. § 1B1.13, extraordinary and compelling reasons exist based on

6

the medical condition of the defendant where the defendant is "(i) suffering from a terminal illness," or "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (II) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Application Note 1, U.S.S.G. § 1B1.13.

Whether "extraordinary and compelling reasons" exist, however, is only "[t]he threshold question."  United States v. Daugerdas, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020) (Pauley, J.).  "[T]his Court's analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate release."  Id. at *4.  As noted above, the "Court must also 'consider[] the factors set forth in section 3553(a).'"  Id.  The § 3553(a) factors include, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct; [and]
> (C) to protect the public from further crimes of the defendant . . . .

18 U.S.C. § 3553(a).

Moreover, U.S.S.G. § 1B1.13 provides that, to grant compassionate release, the Court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13.

It is a defendant's burden to prove that "extraordinary and compelling reasons" exist; that he is not a danger to the community; and that the Section 3553(a) factors and all other relevant considerations warrant the Court exercising its discretion to grant early release.  See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992); see also United States v. Israel, 05 CR 1039 (CM), 2020 WL 5641187, at *3 (S.D.N.Y. Sept. 22, 2020).

III. Discussion

Because more than thirty days have passed since Defendant's appeal of the Warden's denial of his request for release, Defendant has exhausted his administrative remedies.

The Court finds that, based on Defendant's asthma and obesity, he has presented "extraordinary and compelling circumstances warranting release" under § 3582(c).  However, that is only "[t]he threshold question."  United States v. Daugerdas, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020) (Pauley, J.)  The Court must also consider the factors set out in § 3553(a).  Here, those factors counsel against release.

First, Defendant was convicted of a very serious crime. Defendant was a leader of a group that distributed crack cocaine from a house in Newburgh, New York (the "Newburgh House") (See Letter from Rushmi Bhaskaran ("Gov. Opp."), dated Oct. 14, 2020 [dkt. no. 233], at 1 (citing PSR ¶¶ 17-18).  Mr. Gadsden was "one of [the] two most significant players in this conspiracy," who controlled who could sell crack cocaine from the Newburgh House, and when they could sell it. (Id. (citing PSR ¶ 31); Ex. A. to Gov. Opp. ("2007 Sent. Tr."), dated July 26, 2007 [dkt. no. 233-1], at 29-30, 4).) In connection with the conspiracy, Defendant engaged in acts of violence, and, during the course of the charged conduct, the Court found the defendant "clearly" responsible for distributing "far above 1.5 kilograms" of crack cocaine.  (2007 Sent. Tr. at 29:9-12.)  In addition, the Court found that Mr. Gadsden used a minor to sell drugs on Mr. Gadsden's behalf.  (Id. at 30.)

As noted by the Court of Appeals, Defendant's guidelines range was life, but Judge Robinson sentenced him initially to 300 months incarceration and, upon resentencing in light of Kimbrough, to 262 months incarceration--both significantly below-guidelines sentences.  In doing so, Judge Robinson noted that, even if the then-pending legislation establishing a one-to-one ratio between crack and powder cocaine were to pass--resulting in a range of 210 to 262 months for Defendant--"[t]his

is the lowest sentence that would be in any way even a reasonable one for Mr. Gadsden." (Ex. B. to Gov. Opp. ("2010 Sent. Tr."), dated April 28, 2010 [dkt. no. 233-2], at 34.) Clearly, Judge Robinson imposed a serious sentence for a serious crime. If the Court were to grant Defendant's motion, it would reduce his sentence by some 87 months--a third of his overall sentence.[1] Such a vast reduction from "the lowest sentence that would be in any way even a reasonable one" in the eyes of the trial judge who viewed all the evidence would, in the Court's view, undermine the need for Defendant's sentence to reflect the seriousness of his offense.

Second, the Court has concern about the need to protect the public from further dangerous crimes of this Defendant. As noted above, the trial testimony established Defendant's willingness to engage in acts of violence--assaulting a drug dealer who did not adhere to the prescribed schedule, swinging a plank at another person, and smashing a bottle on the head of a crack customer. (See Gov. Opp. at 2.) While Defendant attempts to minimize these acts as not charged conduct, conduct that extends back to his younger years, and conduct less serious than that seen in other drug conspiracies, (Letter from Theodore S.

_____

[1] Factoring in credit for good time, Defendant estimates the reduction to be closer to a fifth of his sentence. (Def. Reply at 3-4.)

Green, dated Oct. 23, 2020 [dkt. no. 235]), the disregard for others that it demonstrates is nonetheless concerning to the Court.  Releasing this 42-year-old Defendant would, in the Court's view, present an unwarranted danger to his community.

Finally, the Court notes that Defendant's post-sentence record of a single minimal disciplinary violation and completing numerous courses is indeed laudable, but it is not of the extraordinary quality that other compassionate release applicants have presented.  See e.g., United States v. Millan, No. 91-CR-685 (LAP), 2020 WL 1674058, at *10 (S.D.N.Y. Apr. 6, 2020) (citing letters of support from BOP officials and detailing defendant's work helping others, including through religious ministry, work as a R.O.P.E. Program facilitator, and Suicide Watch Companion Team member, among other deeds); United States v. Panton, No. 89 CR. 346 (LAP), 2020 WL 4505915, at *7 (S.D.N.Y. Aug. 4, 2020) (detailing, among other deeds, the defendant's participation in a program for juveniles with behavioral issues and his counseling of a victim of sexual abuse who the defendant encouraged to report the abuse).

IV.  Conclusion

For the reasons set out above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c) (dkt. no. 232) is denied.

**SO ORDERED.**

11

```
Dated:      New York, New York
            February 18, 2021
```

_____
LORETTA A. PRESKA
Senior United States District Judge